# EXHIBIT B

Jonathan L. Sulds (JS-4674)
Jonathan L. Israel (JI-5882)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000

*Attorneys for Defendant United Parcel Service, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

CLIVE DENNIS,

                                          Plaintiff,

                  -against-

UNITED PARCEL SERVICE, INC. and
LOCAL 804, I.B.T. UNION,

                                          Defendants.

-------------------------------------------------------- x

Index No. 07-Civ-9754 (HB)

**ANSWER OF DEFENDANT
UNITED PARCEL SERVICE, INC.**

         Defendant United Parcel Service, Inc. ("UPS"), by and through its attorneys Akin Gump

Strauss Hauer & Feld LLP, hereby answers the Complaint (the "Complaint") filed by Clive

Dennis ("Plaintiff") as set forth below.  UPS further states that any allegation in the Complaint

that is not expressly admitted below is denied.

<u>NATURE OF THE ACTION</u>

         1.         With respect to Paragraph 1 of the Complaint, UPS admits that Plaintiff purports

to assert claims and seek remedies under the cited statutes and laws, but denies that there is any

basis in fact or in law for the claims asserted by Plaintiff.

2.    With respect to Paragraph 2 of the Complaint, UPS admits that Plaintiff purports to assert claims and seek remedies under the cited statutes and laws, but denies that there is any basis in fact or in law for the claims asserted by Plaintiff.

## JURISDICTION AND VENUE

3.    Paragraph 3 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS admits that Plaintiff purports to ground jurisdiction as alleged.

4.    Paragraph 4 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS admits that Plaintiff purports to ground jurisdiction as alleged, and denies the factual allegations therein.

5.    Paragraph 5 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, UPS admits that Plaintiff purports to ground proper venue as alleged, and denies the allegation that it engaged in unlawful employment practices.

## PARTIES

6.    UPS admits the allegations in Paragraph 6 of the Complaint, except denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Plaintiff's national origin and residence.

7.    UPS denies the allegations in Paragraph 7 of the Complaint, except admits and avers that employee was employed by UPS and that UPS maintains an office located at 643 West 43rd Street, New York, New York.

8.    UPS admits the allegations in Paragraph 8 of the Complaint.

2

9. UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 9 of the Complaint.

10. Paragraph 10 of the Complaint contains conclusions of law to which no response is required.

## ADMINISTRATIVE PROCEDURES

11. UPS denies the allegations in Paragraph 11 of the Complaint.

12. UPS denies the allegations in Paragraph 12 of the Complaint.

13. UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 13 of the Complaint, except admits and avers that Defendant UPS and Plaintiff are parties to the Agreement identified in Paragraph 18 and attached hereto as Exhibit 2.

## FACTUAL ALLEGATIONS

14. UPS admits the allegations in Paragraph 14 of the Complaint.

15. UPS denies the allegations in Paragraph 15 of the Complaint.

16. UPS denies the allegations in Paragraph 16 of the Complaint.

17. UPS denies the allegations in Paragraph 17 of the Complaint.

18. UPS denies the allegations in Paragraph 18 of the Complaint, and admits and avers as follows:  On or around June 23, 2005, UPS terminated Plaintiff's employment due to his failure to respond to repeated requests for information concerning his extended absence from work.  Subsequently, Plaintiff challenged the termination by filing a grievance and demand for arbitration (through his union, Defendant Local 804) and also filing an administrative charge of race, national origin, and disability discrimination with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") ("Dennis I").

3

*See* Exhibit 1 (a true and correct copy of the charge filed in Dennis I). In or about February 2006, UPS permitted Plaintiff to return to work. Plaintiff's grievance was resolved subsequently via an agreement of the parties dated April 13, 2006 ("Agreement"), which included the following terms: (i) Plaintiff withdrew the administrative charge filed in Dennis I, (ii) the resolution of the said grievance was not, and would not be construed as, an admission of any wrongdoing by UPS, and (iii) Plaintiff released all claims against Defendant UPS arising on or prior to the date of the Agreement. *See* Exhibit 2 (a true and correct copy of the Agreement); Exhibit 3 (a true and correct copy of the SDHR Order of Withdrawal in Dennis I, dated May 8, 2006).

19.    UPS denies the allegations in Paragraph 19 of the Complaint.

20.    UPS denies the allegations in Paragraph 20 of the Complaint; except admits and avers that on or about October 6, 2006, Plaintiff was responsible for the loss of one bag containing eight high-value packages that he was assigned to pick up at a Manhattan location, and UPS subsequently determined that Plaintiff was dishonest during its investigation into the loss of said packages.

21.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 21 of the Complaint, except admits and avers that Plaintiff picked up packages at a Manhattan location.

22.    UPS denies the allegations in Paragraph 22 of the Complaint.

23.    UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 23 of the Complaint; except admits and avers that on or about October 6, 2006, Plaintiff was responsible for the loss of one bag containing eight high-

4

value packages that he was assigned to pick up at a Manhattan location, and UPS subsequently determined that Plaintiff was dishonest during its investigation into the loss of said packages.

24.    UPS denies the allegations in Paragraph 24 of the Complaint.

25.    UPS denies the allegations in Paragraph 25 of the Complaint.

26.    UPS denies the allegations in Paragraph 26 of the Complaint.

27.    UPS denies the allegations in Paragraph 27 of the Complaint.

28.    UPS denies the allegations in Paragraph 28 of the Complaint.

29.    UPS denies the allegations in Paragraph 29 of the Complaint and admits and avers as follows: On October 19, 2006, UPS terminated Plaintiff's employment after determining that Plaintiff was responsible for the loss of several high-value packages at a pick-up location in Manhattan and was dishonest during UPS's ensuing investigation into the loss of those packages. In a subsequent grievance arbitration held pursuant to a collective bargaining agreement between Defendants UPS and Local 804, Arbitrator Elliott D. Shriftman sustained the factual determinations made by UPS in support of Plaintiff's termination, held that Plaintiff's termination was for just cause, and noted that, in hearing "thousands of cases over the last twenty years," he could not "recall one where he had so frequently indicated in the margins of his notes how many times [Plaintiff] had lied." Exhibit 4 at 24 (a true and correct copy of the Opinion and Award of Arbitrator Elliott D. Shriftman, Esq., dated January 7, 2007). In addition to the foregoing grievance arbitration, Plaintiff also challenged the termination by filing two separate administrative charges with the SDHR and EEOC (one after the termination ("Dennis II"), and the other after the decision issued by Arbitrator Shriftman ("Dennis III")) alleging that UPS had engaged in unlawful retaliation. *See* Exhibit 5 (a true and correct copy of the Complaint in Dennis II dated November 20, 2006); Exhibit 6 (a true and correct copy of the Complaint in

Dennis III dated January 17, 2007). In each case, Plaintiff's administrative charge was dismissed for lack of probable cause in decisions expressly citing the findings of Arbitrator Shriftman and affirming UPS's legitimate and non-discriminatory reasons for the termination. *See* Exhibit 7 (a true and correct copy of the Determination and Order After Investigation in Dennis II dated December 7, 2007); Exhibit 8 (a true and correct copy of the Determination and Order After Investigation in Dennis III dated June 29, 2007).

30.     UPS makes no answer to the allegations in Paragraph 30 of the Complaint which relate to a cause of action brought against another defendant. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations in Paragraph 30.

31.     UPS makes no answer to the allegations in Paragraph 31 of the Complaint which relate to a cause of action brought against another defendant. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Defendant Local 804 and denies the allegations concerning UPS.

32.     UPS makes no answer to the allegations in Paragraph 32 of the Complaint which relate to a cause of action brought against another defendant. To the extent a response is required, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Defendant Local 804 and denies the allegations concerning UPS.

33.     UPS denies the allegations in Paragraph 33 of the Complaint.

34.     UPS denies the allegations in Paragraph 34 of the Complaint, and further admits and avers that Plaintiff's federal and state law claims of unlawful discrimination and retaliation

6

filed with the SDHR were either (i) voluntarily withdrawn (and are now waived) pursuant to the Agreement, or (ii) dismissed by the SDHR with a finding of no probable cause. *See* Exhibits 2, 3, 7 and 8.

35.    With respect to Paragraph 35 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Plaintiff's mental and emotional condition, and UPS denies the remaining allegations in Paragraph 35 of the Complaint.

36.    With respect to Paragraph 36 of the Complaint, UPS denies knowledge or information sufficient to form a reasonable belief as to the truth of the allegations concerning Plaintiff's medical costs and expenses, and UPS denies the remaining allegations in Paragraph 36 of the Complaint.

37.    With respect to Paragraph 37 of the Complaint, UPS admits that Plaintiff has requested a jury to try all claims triable by jury.

38.    With respect to Paragraph 38 of the Complaint, UPS admits that Plaintiff purports to claim that he has no adequate remedies at law, but denies that Plaintiff is entitled to any remedies of any kind.

### A. AGAINST DEFENDANT UPS

39.    With respect to Paragraph A.1 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS under the federal statutes cited therein, but denies that Plaintiff is entitled to such or other remedy or relief.

40.    With respect to Paragraph A.1(i) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

41.    With respect to Paragraph A.1(ii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

42.    With respect to Paragraph A.1(iii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

43.    With respect to Paragraph A.1(iv) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

44.    With respect to Paragraph A.1(v) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

45.    With respect to Paragraph A.1(vi) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

46.    With respect to Paragraph A.1(vii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

47.    With respect to Paragraph A.2 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS under the New York State Human Rights Law, but denies that Plaintiff is entitled to such or other remedy or relief.

48.    With respect to Paragraph A.2(i) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

49.    With respect to Paragraph A.2(ii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

50.    With respect to Paragraph A.2(iii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

51.    With respect to Paragraph A.2(iv) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

52.    With respect to Paragraph A.2(v) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

53.    With respect to Paragraph A.2(vi) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

54.    With respect to Paragraph A.2(vii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

55.    With respect to Paragraph A.3 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS under the New York City Administrative Code, but denies that Plaintiff is entitled to such or other remedy or relief.

56.    With respect to Paragraph A.3(i) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

57.    With respect to Paragraph A.3(ii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

58.    With respect to Paragraph A.3(iii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

59.    With respect to Paragraph A.3(iv) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

60.    With respect to Paragraph A.3(v) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

61.    With respect to Paragraph A.3(vi) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

62.    With respect to Paragraph A.3(vii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

63.    With respect to Paragraph A.4 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS for wrongful termination under New York State Law, but denies that Plaintiff is entitled to such or other remedy or relief.

64.    UPS denies the allegations in Paragraph A.4(i) of the Complaint.

65.    UPS denies the allegations in Paragraph A.4(ii) of the Complaint.

66.    With respect to Paragraph A.4(iii) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

67.    With respect to Paragraph A.5 of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS for defamation of character under New York State Law, but denies that Plaintiff is entitled to such or other remedy or relief.

68.    UPS denies the allegations in Paragraph A.5(i) of the Complaint.

69.    UPS denies the allegations in Paragraph A.5(ii) of the Complaint.

70.    UPS denies the allegations in Paragraph A.5(iii) of the Complaint.

71.    With respect to Paragraph A.5(iv) of the Complaint, UPS admits that Plaintiff purports to seek remedies and relief against UPS, but denies that Plaintiff is entitled to such or other remedy or relief.

## B. AGAINST DEFENDANT LOCAL 804, I.B.T.

72.     UPS makes no answer to the allegations in Paragraph B.1 which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1.

73.     UPS makes no answer to the allegations in Paragraph B.1(i) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(i).

74.     UPS makes no answer to the allegations in Paragraph B.1(ii) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(ii).

75.     UPS makes no answer to the allegations in Paragraph B.1(iii) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(iii).

76.     UPS makes no answer to the allegations in Paragraph B.1(iv) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(iv).

77.     UPS makes no answer to the allegations in Paragraph B.1(v) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(v).

78.     UPS makes no answer to the allegations in Paragraph B.1(vi) which are made under a cause of action brought against another defendant. To the extent a response is required, UPS denies the allegations in Paragraph B.1(vi).

## DEFENSES AND AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiff's non-federal claims are barred by the filing, withdrawal and/or dismissal of his claims by the SDHR.

3.    The Court lacks personal jurisdiction over Defendant UPS.

4.    Plaintiff's claims are barred on the ground of insufficiency of service of process.

5.    Plaintiff has failed to exhaust his administrative remedies and/or to comply with all applicable administrative procedures, and thus has failed to satisfy conditions precedent to maintaining this action.

6.    Plaintiff's claims are barred to the extent the Complaint alleges discriminatory or retaliatory conduct that was not previously alleged in a timely filed administrative charge against UPS with the EEOC or that otherwise exceeds the scope of any such charge, the EEOC's investigation or the EEOC's determination.

7.    Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.   In particular, Plaintiff failed to file his lawsuit within ninety (90) days of receiving the Notice of Right to Sue from the EEOC, and he failed to serve Defendant within the required limitations period.

8.    Plaintiff's claims are barred, in whole or in part, by laches, waiver, release, arbitration and award, the existence of an applicable collective bargaining agreement, satisfaction and accord, estoppel, res judicata, collateral estoppel, and/or unclean hands. *See* Exhibit 2 (Agreement containing a release of all claims against UPS arising on or before April 13, 2006); Exhibit 4 (Arbitration Award sustaining termination of Plaintiff's employment for just cause).

9.      If Plaintiff's rights were violated, any such violations were the result of individuals acting outside the scope of their employment with UPS and without UPS's consent. UPS did not, and does not, authorize, condone, ratify, or tolerate discrimination and/or retaliation, or tortious conduct; instead, UPS prohibits such conduct in all cases, including this one brought by Plaintiff. UPS is not liable to Plaintiff for the acts or omissions of any supervisory or managerial employee which were beyond the scope of employment, and hence, any such conduct may not be attributed to UPS through principles of agency, *respondeat superior*, or otherwise.

10.      Plaintiff's claims of discrimination and/or retaliation are barred because UPS effectuated prompt, remedial relief in response to Plaintiff's complaints, if any, of discrimination and/or retaliation.

11.      Plaintiff's claims of discrimination and/or retaliation are barred because UPS promulgated an effective policy of preventing and correcting such conduct and/or occurrences, of which Plaintiff unreasonably failed to take advantage.

12.      There is no basis, in law or in fact, to support Plaintiff's claims for punitive damages under Title VII, § 1981 of the Civil Rights Act of 1866, or state or local law. UPS did not engage in any unlawful practices with malice or with reckless indifference to Plaintiff's rights, if any. UPS's actions were undertaken in good faith and were based upon legitimate, non-discriminatory, and non-retaliatory reasons. *See* Exhibit 4 (Arbitration Award sustaining termination of Plaintiff's employment for just cause).

13.      All employment decisions regarding or affecting Plaintiff were based upon legitimate, non-discriminatory reasons that were in no way related to his race, national origin, or

alleged protected activity, and were made in good faith and without any intent to discriminate. *See id.*

14.    On the facts alleged, Plaintiff is not entitled to the compensatory and punitive damages requested in the Complaint, or any other relief.

15.    The alleged acts or omissions of UPS were not the proximate cause of any injuries or damages allegedly incurred by Plaintiff.

16.    Plaintiff has failed to mitigate damages.

17.    The claims in the Complaint are barred, in whole or in part, by the doctrine of after-acquired evidence.

18.    The Complaint, or portions thereof, fails to plead any or all claims with sufficient particularity.

19.    Plaintiff's defamation claims are barred in whole or in part by the doctrines of substantial truth, justification, opinion, qualified privilege and privilege, including but not limited to, the judicial and quasi-judicial privileges.

20.    Plaintiff's defamation claims are barred in whole or in part because any injuries or damages allegedly sustained were contributed to or caused by Plaintiffs' own actions or omissions.

21.    Plaintiff is not entitled to any recovery because any alleged acts or omissions by UPS were made in good faith, in conformity with and reliance on applicable administrative regulations, orders, rulings, approvals or interpretations, or administrative practice or enforcement policies.

22.    To the extent, if any, Plaintiff has suffered any damages and/or losses, such damages and losses were a result of Plaintiff's own conduct and/or omissions.

15

UPS reserves the right to add, alter and/or amend its defenses and affirmative defenses as the course of discovery so requires.

WHEREFORE, having fully answered the Complaint, UPS respectfully requests that the Court dismiss Plaintiff's claims with prejudice, or in the alternative, that each and every request for relief in the Complaint be denied and that all costs and attorneys' fees be awarded to UPS against Plaintiff along with such other relief as the Court may deem just and proper.

Dated:  New York, New York
        January 16, 2008

Respectfully submitted,

Jonathan L. Sulds (JS-4674)
Jonathan L. Israel (JI-5882)
Evandro C. Gigante (EG-7402)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Ave.
New York, New York 10022
(212) 872-1000
(212) 872-1002 (fax)

*Attorneys for Defendant United Parcel Service, Inc.*

16

**Exhibit 1**

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK : EXECUTIVE DEPARTMENT

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

CLIVE DENNIS

                                    Complainant

                    v.

UNITED PARCEL SERVICE, INC.

                                    Respondent

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10110310**

Federal Charge No. 16GA601849

I, Clive Dennis, residing at 120-55 166th Street 1 Floor, Jamaica, NY, 11434, charge the above named respondent, whose address is 643 West 43rd Street Suite 702, New York, NY, 10036 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability, national origin, race/color.

Date most recent or continuing discrimination took place is 2/7/2006.

The particulars are:

1.    I am a Black Jamaican with an impairment (severe lumbosacral strain sprain) which is defined as disability under the NYS Human Rights Law. Because of this, I have been subject to unlawful discriminatory actions.

2.    On May 16, 1990, I was hired by the respondent as a Unloader. About 4 years ago, I was promoted to the Sorter and Driver position.

3.    On or about the Winter of 2005, my Immediate Supervisor, Thomas Smith (White) was told by Jerry Iacona to give me a Metro card. Mr. Smith refused to give me the Metro card. I told Mr. Iacona and he said he would take care of it. About two days later, Mr. Smith said to me, "I don't like you "f_____" Jamaican's. You should be lucky you have a job." I told Jerry I believed Mr. Smith was a racist. He said he would look into it.

4.    On or about March 7, 2005, I went to the Doctor because of pains in my lower back. I called Mr. Smith to explain that I

Complaint
SDHR Case No. 10110310
Clive Dennis v. United Parcel Service, Inc.

was being treated by my doctor for a recurrence of work-related injuries to my back and legs. I told him I did not know when the doctor would release me to come back to work. Mr. Thomas said "Do what you got to do."

5.    On or about June 17, 2005, I received a letter from my job from Tom Schultz the District Labor Relations Manager asking me to contact the District Nurse, Qin Wang and provide detailed medical documentation or my name would be dropped from their payroll. I contacted my doctor right away and on June 18, my doctor faxed information to the nurse.

6.    My doctor released me to go back to work as of October 24, 2005. The week before I called to speak to Mr. Smith but he was not available. I called back and June "last name unknown", transferred me to Rick "last name unknown". I told Rick that my doctor was releasing me to go back to work. Rick told me that to his knowledge I "no longer worked for United Parcel Service." I called my Union Representative, Bill Leary, who said he would take care of it.

7.    I later found out I was terminated August 2005. I had never received notification of the termination.

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of disability, national origin, race/color, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I also charge the above-named respondent with violating the Americans with Disabilities Act (ADA) (covers disability relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

Complaint
SDHR Case No. 10110310
Clive Dennis v. United Parcel Service, Inc.

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

*Clive Dennis*
Clive Dennis

---

STATE OF NEW YORK )
                   ) SS:
COUNTY OF Nassau )

Clive Dennis, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

*Clive Dennis*
Clive Dennis

Subscribed and sworn to
before me this 21 day
of Feb , 2006

Signature of Notary Public

JEAN E MILLIGAN
NOTARY PUBLIC ST...
NO. 01...
QUALIFIED IN NAS...
COMMISSION EXPIRES Aug 8 2006

**Exhibit 2**

## AGREEMENT

This agreement is made by United Parcel Service, Inc, ("UPS"), Local 804, IBT ("Union") and Clive Dennis ("Employee"):

1. UPS hereby withdraws the termination ~~+ within 10 business days after the execution~~ of Employee. Employee shall not be entitled to ~~and delivery of this Agreement by the~~ any back pay. ~~for the parties, UPS will pay to Employee, in full settlement of all claims (except as specified below) the gross sum of $19,000 less applicable taxes and deductions.~~

2. The Union hereby withdraws with prejudice the demand for arbitration in AAA Case no. 13 300 02725 05 (the "Arbitration").

3. Employee hereby withdraws with

2

prejudice all complaints or charges he has filed ~~with~~ (or that have been filed on his behalf) with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights or any other court or agency relating to discrimination in employment or retaliation, including Charge No. 166A-001849

4. Employee hereby releases and discharges UPS and its parents, subsidiaries and affiliated entities and all of their past, present and future directors, officers, employees, agents, ("Releasees") successors and assigns from all claims, whether known or unknown, that Employee has, had

3

or may have against Releasees arising out

of any act, omission, transaction or occurrence

up to and including the date of this

Agreement. This Release shall not be deemed

to release claims ~~arising under the~~ for,

Worker's Compensation benefits. ~~or~~

~~Employee hereby resigns from UPS,~~

~~for personal reasons, effective immediately.~~

~~Employee will not re-apply for employment~~

~~with UPS.~~

5. This Agreement does not constitute

and shall not be construed as an admission

by UPS that it has violated the

collective bargaining agreement with the

4

Union or committed any wrongdoing whatsoever. This Agreement shall not be cited as precedent except in a proceeding to enforce its terms.

6. Employee hereby acknowledges that he has been fully and fairly represented by the Union throughout the negotiation of this Agreement and the processing of the Arbitration.

7. The terms and conditions of this Agreement are confidential and shall not be disclosed by Employee except to his Union representatives and immediate family members.

5          CD vd

8. Employee acknowledges that he has read this Agreement fully and carefully and understands its terms and is signing it knowingly and voluntarily.

Dated: New York, New York
        April 13, 2006

CLIVE DENNIS      LOCAL 804, IBT      UNITED PARCEL SERVICE INC.

Clive Dennis   By: _____   By: _____

**Exhibit 3**

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK : EXECUTIVE DEPARTMENT

---

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

CLIVE DENNIS
                          Complainant

                v.

UNITED PARCEL SERVICE, INC.
                          Respondent

---

ORDER OF WITHDRAWAL

Case No.
10110310

Federal Charge No. 16GA601849

On 2/21/2006, Clive Dennis filed a verified complaint with the State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, national origin, race/color in violation of the Human Rights Law of the State of New York.

Thereafter, the complainant notified the Division of the withdrawal of this complaint in a written communication dated April 13, 2006.

Pursuant to the Human Rights law and the Rules of Practice of the Division, the complaint is ordered withdrawn and the file is closed.

Dated: *May 8, 2006*
        New York, New York

                    STATE DIVISION OF HUMAN RIGHTS

            By: _____
                Wilson Ortiz
                Acting Regional Director

**Exhibit 4**

American Arbitration Association

————————————————X

In the Matter of the Arbitration

Between

**Local 804, I.B.T.**

-and-

**United Parcel Service**

————————————————X

Before: Elliott D. Shriftman, Esq., Arbitrator

Appearances:

For the Union:    Meyer, Suozzi, English & Klein
                 by:  Hanan Kolko, Esq.

For the Employer:  Proskauer Rose, LLP
                 by: Peter Conrad, Esq.

**OPINION AND AWARD
OF ARBITRATOR**

AAA Case No.13 300 02436 06

(Clive Dennis)

* * * * * * * * *

The undersigned, pursuant to the selection of the parties, was duly designated to serve as arbitrator of the dispute described below.  Hearings were held at the offices of Proskauer Rose, LLP, 1585 Broadway, New York City, on December 1, 5, 6 and 12, 2006. The parties appeared; were represented, as noted; and, were given a full opportunity to present evidence and make arguments.

## SUBMISSION

The parties agreed that the issue before the Arbitrator is as follows:

Does the Employer have just cause to discharge Clive Dennis; and, if not, what shall be the remedy?

## BACKGROUND

Local 804, I.B.T. ("Union") and United Parcel Service ("UPS", "Company" or "Employer") are parties to a collective bargaining agreement ("Contract") which is still in effect.[1] Clive Dennis ("Dennis" or "Grievant"), who has been employed by the Company for some sixteen years, was given written notice of termination on October 19, 2006.[2] The letter followed a meeting held that same day with Dennis and both Union and Company representatives. Grievant was terminated for dishonesty in connection with package handling and for proven dishonesty in connection with statements he made to investigators and Company representatives with respect to an incident occurring on October 6, 2006. Based on an agreement reached between the parties, and consistent with the Contract, Dennis was retained on the payroll pending the issuance of this award. The Union's essential defense is that Grievant did not lie. It believes the Company has expanded its grounds for the discharge by arguing that Dennis was involved in the disappearance of packages which the Union contends was not a position taken by the Company in the termination letter.

The Union does not dispute that Dennis picked up three (3) clear plastic bags, each containing packages, which he was to bring to his truck for return to the Company's New York City 43rd Street Center and that, at some point thereafter, one of those bags disappeared. The Company acknowledges that it has no proof that Dennis actually handed the bag of packages to a third party but it reached conclusions that he likely did so after comparing the explanations he gave to investigators, some arriving at the scene shortly after Dennis called in the loss of one (1) plastic bag, with a videotape taken by a Japanese confectionery store in front of which the UPS vehicle

---

[1] The Contract was deemed received into the record as Joint Exhibit 1.
[2] The letter was received into the record as Joint Exhibit 2.

2

driven by Grievant was parked. In the Company's judgment, Grievant gave both inconsistent and implausible stories based on the timing of his calls to supervisors and his activities as revealed by the surveillance video.

Testimonial Evidence

Preliminarily, the Arbitrator should make it clear that in summarizing the witnesses' testimony, the absence of phrases such as, among others, "he/she testified" or "he/she alleged", does not mean that the Arbitrator has found the particular witness' statements to be true. Such findings are made in the Discussion Section below unless otherwise noted. The choice to not repeatedly use these phrases was for ease of reading.

The Employer's first witness, George Burgos ("Burgos"), has been in its employ for twelve and a half years and, on October 6, 2006, held the position of Operations Management Specialist. His responsibilities included the dispatch of Drivers from Air Center #1020 and customer liaison. Dennis was assigned to that Air Center during the day and his responsibilities were to pick up and deliver air packages. On October 6, 2006, between 5:00 p.m. and 5:15 p.m., Burgos and Dennis had a conversation via Company-issued Nextel radios. Grievant advised Burgos that his package car was blocked between a FedEx truck from behind and another vehicle in the front. Burgos told Dennis that he would contact FedEx and a conference call would be arranged between the FedEx operator and the two of them. Burgos told Grievant to obtain the number of the FedEx truck so it could be supplied to the FedEx operator. Dennis provided the number during the time that the FedEx operator was on the line. During this conversation, the FedEx operator had made contact with its local dispatcher and told Burgos that the problem would be rectified shortly and Burgos so

3

advised Dennis. The witness estimated that this conversation lasted approximately five minutes. Grievant had provided the location of his pickup to Burgos – the UPS customer counter located on the concourse level at One Rockefeller Plaza. Approximately twenty minutes later, Dennis called Burgos again and informed him that he was missing a bag of packages. When Burgos asked how this occurred, Grievant told him that it happened during their first conversation. At that time, Grievant had placed two packages between the rear of his truck and the FedEx truck and in the course of walking around the back of the Fed Ex truck to get the truck number and his return to where he had dropped the bags, he noticed that one bag was missing. Burgos told Grievant that he would contact the Security Office while Grievant remained on the line. Once the connection was made, Burgos would allow the Security representative and Grievant to discuss the situation directly. Before doing so, Burgos told Dennis to let him know as soon as someone from Security arrived on the scene. Shortly thereafter, Grievant advised Burgos that a Security employee had arrived. Burgos stated that at no time in their second conversation when Grievant told him that the bag was missing, did Grievant provide any additional information. Thus, for example, Dennis never made reference to a male Hispanic in a green jacket who had asked for directions nor that any other individual had interacted with him at the time he discovered the bag was missing.

The Employer's second witness, Shawn Dozier ("Dozier"), has been employed by a security firm, United Protective Group ("UPG"), for approximately eight years. UPG provides security services for UPS with an emphasis on cases involving stolen packages from UPS Drivers in the field and, particularly those working in the Diamond District. Prior to his employment with UPG, Dozier had been employed for some thirteen years with the New York City Police Department, eight of which as a detective. On October 6, 2006, at approximately 5:00 p.m., Dozier's supervisor

dispatched him to where Grievant's truck was parked. Dozier had been advised that packages had been taken from the Driver. Dozier and his partner, Burt Galin ("Galin"), were driving in a patrol car when they received this advice. When they arrived, at approximately 5:30 p.m. and spotted the truck in question, it was unattended. Shortly thereafter, Dozier observed Dennis walking on the side walk toward the truck from the direction of Sixth Avenue and carrying two plastic bags. A FedEx package car was parked directly behind Grievant's vehicle and a motorcycle was parked in front of it. Dozier had never had any prior contact with Dennis. He asked Grievant if he was the Driver of that UPS vehicle and he answered in the affirmative. Grievant told him that a plastic bag containing packages was taken. Dozier asked if he knew whether they were "values" and how many packages had been in the bag. Grievant answered in the negative to both questions. Dozier and Dennis then went together to the UPS Center from which he had obtained the bags. This took them two minutes. The questioning resumed in an office there in the presence of an Air Counter Supervisor. Grievant told Dozier that he was unable to load the packages into his truck. He placed the bags on the ground and after providing Burgos with the FedEx truck number, Dennis discovered that a bag containing packages was missing. Dennis volunteered that in the course of speaking to Burgos, a male Hispanic had asked Grievant for directions and that even after Dennis had pointed this individual in the direction of Sixth Avenue, he continued to question Dennis and became loud. Dennis stated that this male was approximately five feet, eight inches tall and was wearing a green jacket. Grievant was asked whether he had observed anyone else and he answered in the negative. Eventually, Grievant estimated that there were between eight to ten packages in the missing bag. Dozier then advised Dennis that he would be obliged to file a police report and a store employee contacted the police department. Dozier was present for the first few minutes of the questioning of

Grievant by police officers.

When Dozier returned to his office a few hours later, he completed a Security Incident Report.[3] He has prepared such reports on numerous occasions. Dozier had no further involvement in the investigation after that date and played no part in the decision to terminate Grievant. Dozier did receive a copy of the police report which was introduced into the record.[4] Dozier estimated that he spends seventy percent (70 %) of his time investigating Diamond District package losses.

The Employer's next witness, Alex Gamboa ("Gamboa"), has been in its employ for ten years, the last seven of which as a Security Specialist. He is assigned to high value operations investigations. Gamboa interviewed Grievant on October 10, 2006 at 6:00 p.m. in the Security office of the 43rd Street hub. Gamboa was directed to do so by his Manager to ascertain what had transpired on October 6. This meeting lasted twenty-five minutes, after which Gamboa prepared a Security Incident Report which was introduced into the record.[5] It was based on and was a summary of what Dennis had told him. The witness stated that Dennis had made no mention of anyone else in the area when the loss occurred, including a male Hispanic in the green jacket referred to earlier. During this meeting, Dennis wrote out his own statement, identified by the witness and introduced into the record.[6] That statement simply indicates that at the time Dennis was on the phone with Burgos, he ascertained the number of the FedEx truck at the request of Burgos. Dennis looked around and at approximately 5:10 p.m., saw that one bag was missing. The writing makes no mention of any encounter with a male Hispanic in a green jacket. Gamboa stated

---

[3] This document, dated October 6, 2006, was received into the record as Employer Exhibit 1.
[4] Employer Exhibit 2.
[5] Employer Exhibit 3.
[6] Employer Exhibit 4.

that Grievant did not do what he had asked him to do, that is, provide specifics. The witness stated that he gave Dennis as much time as he needed to complete his report. Dennis never objected to giving a statement nor requested to speak to anyone. Grievant signed the report in Gamboa's presence. Gamboa had nothing more to do with the matter other than to provide copies of Grievant's and his own statement to Security Supervisor, John Cleary ("Cleary"). Gamboa was not involved in the decision to terminate Grievant.

Cleary was the next to testify. He has been employed by the Company for over eighteen years, the last twelve of which in its Loss Prevention Department. For the last seven years, he has been a Security Supervisor. Cleary reports to Security Manager, Tim Almquist ("Almquist"). Cleary learned of the incident under scrutiny from Security Associate Peggy Nadramia ("Nadramia"), who contacted him via his cell phone at between 5:00 to 5:30 p.m. that same day, advising that a bag of packages was stolen from a UPS Driver. Nadramia had notified UPG and she told Cleary that security personnel from that firm were on their way to the scene. Cleary's next involvement in the matter was on Tuesday, October 10, when Almquist advised him, in person, about the missing packages and told Cleary to delve into it. The first thing that Cleary did was to obtain the Incident Report from UPG (Employer Ex. 1) which was faxed to him that same day. Cleary then asked Gamboa to interview Dennis. To that point, Cleary had had no conversation with Grievant. Gamboa left his Incident Report and Grievant's written statement on Cleary's desk. Cleary read them on the morning of October 12 and decided then that he needed to interview Dennis and did so later that day. At the same time, Cleary obtained a shipping detail for all of the packages dropped off at the UPS Center at One Rockefeller Plaza. When a customer drops off a pre-paid package, it is scanned and a report is generated. A copy of this report was received into

the record.[7]  Cleary then began a tracking of all of the numbered packages through the UPS tracking system.  Ultimately, he learned that there were a total of six (6) packages missing.  All seemed to be connected to a shipper which acted as a jewelry consolidator.  The Package Movement Report for each of the six (6) packages, containing the name of the shipper and its recipient as well as merchandise description and stated value, if any, was reviewed by Cleary.  These documents were received into the record.[8]  The total estimated value of these packages was $29,000 but the Company's liability was limited to approximately $600.  Sometime after 12:30 p.m. on October 12, Cleary interviewed Dennis in the 6th Floor Security office advising Grievant that he would be interviewed about the loss of packages on October 6.  Present were Shop Steward Danny Perez ("Perez") and Security Specialist John Manion ("Manion").  Cleary ran the meeting which lasted approximately a half hour.  Cleary explained the purpose of the meeting – to ascertain how the theft occurred – and wanted to get as many details as possible.  According to Cleary, Dennis explained that he had made a pickup of three (3) bags of packages and brought them to his package car on 49th Street.  A FedEx truck was parked right behind him and, as a consequence, Dennis was unable to open the rear doors of his vehicle.  Dennis then placed the three (3) bags by his side near the rear of his vehicle in the vicinity of a public phone booth.  Dennis next called Burgos via his Nextel radio and Burgos told him to obtain the FedEx truck number.  To do so, Dennis leaned back, looked off to the right, and provided the numbers to Burgos.  Cleary demonstrated for the Arbitrator how Grievant demonstrated this maneuver.  Cleary testified that Grievant realized at this point that the bag was missing and Dennis told Cleary and the others assembled at this meeting that the only time

---

[7]  Employer Exhibit 5.
[8]  Employer Exhibits 6a through 6f.

8

that the bags were out of his sight was when he looked at the truck number. Cleary recalled that Dennis might have said that he took a step or two back in order to get a view of the rear of the truck. Grievant also told Cleary that after he discovered that a bag was missing, a male Hispanic in a green jacket approached and asked him for directions. The individual was persistent and argumentative and Dennis had to tell him two or three times, "Sixth Avenue is over there!". Grievant told Cleary that because he was already missing a bag, he did not pay much attention to this individual but felt as though he might be setting him up, so he paid more attention to the two (2) bags still in his possession. Cleary told Grievant that something was missing and he wanted the true facts brought out in the open. Dennis insisted that he was telling the truth and did not take any bags. Later that day, Cleary went to the scene with Mangani and Mahion to see if any surveillance video covered the scene, aware that most of New York is covered by security cameras. Dozier had suggested that K. Minamoto, a Japanese bakery opposite where Grievant's truck had been parked, should be contacted about video of the area. Cleary and the other members of his Security team also checked with Rockefeller Center to see if it or its tenants, including NBC, had cameras focused on the site in question. A visit to K. Minamoto produced a VHS tape which Cleary viewed and later converted to a DVD format. Cleary concluded from what he saw on the tape that Grievant's version of the event was not in conformity with what the tape showed were his activities in the relevant time period. Cleary prepared a summary of the times (in military time) between 16:40:24 and 17:17:37 of Dennis' activities as depicted on the tape which Cleary felt were marking points.[9]

At this point in the hearing, the video was played, stopped and resumed in play at the

---

[9] A copy of this detail was received into the record as Employer Exhibit 7. The surveillance video (CD format) was received into the record as Employer Exhibit 8.

9

request of the Arbitrator, Company counsel and/or Union counsel. The Arbitrator took notes as he viewed the tape and as Cleary was examined about the conclusions he had reached in viewing the tape. Of special note are the following times and events: 16:40:24 – Dennis appears on the video coming from Sixth Avenue, holding three (3) clear plastic bags containing packages; 16:40:35 – He is seen facing his UPS truck, holding two (2) bags in his left hand and one (1) in his right hand; 17 seconds later, Dennis sets all three (3) bags down near the phone bank; 16:41:07 – Grievant is seen standing up with three (3) bags at his feet; 16:41:30 – Dennis bends over, picks up one (1) bag and with his right hand raised, walks toward Fifth Avenue with two (1) of the bags remaining by the phone bank. The wheel well of the FedEx truck is immediately behind the two (2) bags; 16:41:37 – Dennis returns to the same spot, holding one (1) bag in his left hand; within a second or two later, Dennis is seen holding one (1) bag in his left hand followed by him picking up one (1) bag in his right hand which he transfers to his left hand. One bag remains on the ground; five seconds later, Dennis is observed with three (3) bags. It is hard to tell which hand is holding two (2) bags but this is cleared up at 16:41:44 where Dennis is seen walking toward Sixth Avenue with all three (3) bags.

Cleary stated that the UPS Center is located at 10 West 49th Street, approximately fifty (50) feet from where the UPS truck was parked. Returning to the video, at 16:43:54, Dennis is seen entering the camera's view from the Sixth Avenue side, holding no bags; four seconds later, Grievant is seen at the phone bank with his hands in his pockets and no bags nearby. Cleary stated that at no time during his questioning of Dennis did Dennis ever say that he brought two (2) or three (3) bags to some point away from the truck, leaving them there for some time and then return with them to the truck. At 16:44:40, Dennis is seen standing in front of the FedEx truck with his left arm

10

raised and no bags in sight. At 16:44:56, Dennis is seen with his left hand in his pocket and no bags present. Three and a half minutes later, he is seen, after an absence, by the West end of the phone bank with no bags present. Five seconds later, Dennis is seen at the Easternmost end of the phone bank and starting to head toward Fifth Avenue with no bags in his hands. Five seconds later, he is seen by the rear wheel of the FedEx truck, facing Northeast. Three minutes later, Dennis is seen on the video, coming from Fifth Avenue, holding at least one bag of packages in each hand. At 16:52:04, Dennis enters the scene from the left, walking eastbound with no bags. At 16:52:14, he is seen standing in front of the phones and it appears that his hands are in his pockets. Dennis is seen at 16:52:42 to 16:52:49 in front of K. Minamoto with no bags. At 16:54:53, Dennis is observed in front of the phone banks, facing Sixth Avenue, with no bags visible. At 16:55:07, Grievant is seen walking toward Sixth Avenue with nothing in his hands. At 16:57:44, Dennis appears coming from the East and may be talking on his cell phone. No bags are present. At 16:58:45, Grievant appears in the video, coming from the left, with no bags. Eleven seconds later, he leaves the range of the camera and is not seen again for another seventeen minutes. At that time, he is seen entering the screen from the left, holding one bag in each hand, and is in front of the phone bank. At this point in the hearing, counsel for the Company pointed out to the Arbitrator and to all assembled that the time being currently viewed on the video was the time Grievant had told investigators he was on the phone with Burgos. At 17:55:56, it appears that two bags are in front of Dennis, corresponding to the front wheel of the FedEx truck. A minute later, he is seen walking away with two bags. Approximately a half minute later, Dennis enters from the left, carrying two bags in his right hand. Approximately fourteen minutes later, Dozier arrives and has met up with Dennis.

Cleary was present at the Union/Management meeting of October 18. At this meeting, Cleary observed that Dennis had changed his story. Six days earlier, Grievant had told Cleary that he had placed the bags at his feet and made a call to Burgos from the rear of the UPS truck. It was in this short time period that one bag was taken. After it, Dennis was confronted by an Hispanic male. On October 18, Dennis said that he walked around the back of the FedEx truck and stepped into the street and when he came around the side of the truck was when he was confronted by a stranger.

Cleary obtained the surveillance tape when he visited the K. Minamoto shop with other Security personnel on October 12. Cleary acknowledged that he did not follow up with the police department and, as far as he knows, no other UPS supervisor or manager had any further interaction with law enforcement agencies to determine what had happened to the packages in question. Apart from getting invoices from the shipper, the Company did not take any other steps to recover the packages. Typically where there is direct evidence of theft by an employee or evidence showing that an employee was involved in a theft, the Company will pursue the matter further with the police department. This case did not provide evidence for a "neat criminal case."

The Company's last witness, Tom Schultz ("Schultz"), has held the title of Labor Relations Manager -- Metro New York for some ten years. The subject incident was brought to his attention a couple of days prior to the October 19 discharge hearing over which Schultz presided. The advice was given to Schultz, in person, by Almquist and Cleary, who, among other things, reported that a video existed reflecting some of the activities at the scene of the loss. Schultz viewed the video on October 19. As of that date, Schultz had been in possession of the statements/reports given by Grievant, Cleary, Gamboa and Dozier. Present at the October 19

meeting were Union Representatives Bill Leary ("Leary") and Perez as well as Grievant, Cleary and Almquist. Schultz told Dennis to provide his version of the events of October 6. Grievant stated that he had "swept the counter" and left with three bags of Air packages which he intended to place in his truck for return to the distribution hub. A FedEx truck parked directly behind Grievant's vehicle prevented him from loading the packages. Dennis told Schultz that he then set the packages down by the back of his package car and walked in front of the UPS truck toward the street at which point he was approached by an Hispanic male asking for directions. For some reason, this individual became loud and argumentative and, when Dennis returned to his vehicle, one of the three bags was missing. Schultz reiterated what Dennis had just said, emphasizing the fact that Grievant had just said that he had walked in front of the vehicle onto the street. At this point, Schultz asked for a recess and conferred privately with Almquist, Cleary and John Mangani ("Mangani"), a Security Manager, and reminded them that they had told Schultz that Grievant had told the investigators, of which Cleary was one, that he [Dennis] had walked to the back of the FedEx truck. The answer which Schultz received was that this was now another version of the incident offered by Dennis. Schultz reviewed Dozier's write-up and then brought the Union group back into the room. Schultz asked Dennis why he had told Cleary and others that he had walked to the back of the FedEx truck and was now saying that he walked in front of the UPS truck. Schultz demanded to know which version Dennis was adopting. Grievant replied that he did not really remember, adding that every day is the same. Schultz reminded him that this was no ordinary day but rather one where a FedEx truck had blocked him and where a bag was missing. Schultz then asked Grievant to review the time chronology beginning with how long after he came out of the UPS Center at Rockefeller Center did he realize the bag was missing. Dennis replied, "Right

away". He had put the bags down; made a call to Burgos; looked for the FedEx truck number; and, then, realized the bags were missing. In reviewing the video, Schultz observed that there was a lot of time when Grievant was seen walking back and forth with three bags, disappearing for over a half hour, which made it plain that the events were not as Grievant had averred. Schultz brought this to Grievant's attention. At that point, Dennis, clutching his bible, stated that he did not steal any packages and that he is not a thief. This prompted Schultz to ask where Dennis had gone with the bags during all the time indicated on the video. Schultz testified that Grievant did not provide a clear answer for his activities between 4:40 p.m. to 5:10 p.m. that day. Schultz then told Grievant that a bag of valuables was missing and that Dennis was not telling him just how it happened. Each time Schultz inquired about where Dennis had walked with the bags, the answers which he received were either, "I don't remember" or "I don't know". Schultz advised Grievant and the Union that he believed that Dennis was lying as manifest by the fact that he had told three or four different versions of the events and that Schultz could no longer believe that Dennis was telling the truth. Schultz advised Dennis that he was being discharged because a bag of valuables was missing and because Grievant had been lying about his activities as evident by the three or four different versions thereof provided by him. Schultz characterized this as, "proven dishonesty". After the meeting had ended, Schultz went with Leary and Perez to the Loss Prevention Office and asked Cleary to play the videotape to prove to Leary and Perez that Dennis' account was inconsistent with respect to his assertion that the bag was stolen in a matter of minutes. Schultz pointed out the parts on the video which made Grievant's account untruthful as far as he was concerned.

Dennis testified next. On October 6, 2006, after picking up three bags of packages from the UPS counter at One Rockefeller Center, he walked to his truck parked on the South side of 49th

14

Street between Fifth and Sixth Avenue, a short distance from the Fifth Avenue corner. Dennis spotted the FedEx truck blocking his access to his own package car. Grievant testified that he did not think to put the three bags in the cab of his vehicle because this would be against Company policy. He could not enter the cargo section of his vehicle through the Driver's side because it was locked. Dennis looked around for approximately seven minutes to see if a FedEx driver would appear and, not seeing one, contacted Burgos via his Nextel radio. Burgos asked for the FedEx truck number which was located right near the driver's side door and remained on the phone as Burgos attempted to contact a FedEx representative to arrange for the moving of the FedEx truck. Grievant had left his bags on the sidewalk opposite the front of his vehicle and, so, walked back to them and observed that a bag was gone. He immediately started to look around to see if anyone in the vicinity was holding a bag. Not finding such a person, Grievant contacted Burgos and reported the situation. He estimated that ten to fifteen minutes separated the two calls to Burgos. Dennis averred that he told Burgos that he had left the bags by the nose of his truck. At that point, Burgos got Nadramia on the line and Grievant provided his location to her. Nadramia told him that someone would be out to the location shortly. Between fifteen to thirty minutes later, Dozier arrived and asked Grievant to make a report of what had transpired and he gave Dozier the facts as outlined above. Dozier asked if Dennis had seen anything suspicious and Dennis told him that a man in a green jacket coming from the street asked him which way was Seventh Avenue and, despite telling this stranger how to get there, he asked Grievant the same question again. Dennis told Dozier that he did not see this stranger running away with anyone else. At that point, Dozier directed him to bring the two bags to the UPS counter and the two of them proceeded directly there. Either Grievant or Dozier contacted the police department and they arrived at the customer counter

15

about a half hour later. Grievant explained what had occurred to the police officers, including the stranger in the green jacket asking for directions. Dozier told Dennis to finish his route and as he returned to his truck, the FedEx driver arrived and moved his vehicle. Grievant testified that he could not recall whether the encounter with the Hispanic male in the green jacket occurred before or after the bag was missing.

During the various meetings with Company representatives, Dennis told them what he remembered and he also said that he did not remember everything "a hundred percent".

In answer to the Arbitrator's question about why he did not put the bags in the cab part of the package car when he found that the rear doors were blocked, Grievant replied that, by Company rule, he is not allowed to put any packages in the front cab.

On cross-examination, Grievant stated that he made the sweep of the One Rockefeller Center UPS counter at approximately 4:45 p.m. He acknowledged that the surveillance tape revealed that he had arrived at his package car at 4:40 p.m. and that it could be accurate. When he arrived there, he observed the FedEx truck blocking his access to the rear doors. A motorcycle was parked at an angle in front of his vehicle, leaving a space of between four and seven inches. Grievant admitted that the motorcycle was present when he pulled up and parked on 49th Street. When asked whether he knew that he had violated UPS policy by pulling his vehicle right up to another vehicle, limiting his ability to pull out of the spot should he be blocked from behind, Dennis claimed he was not aware of it but admitted that it made sense and that Drivers must use common sense in performing their duties. Once he observed that he could not gain access to the rear of the truck, Dennis set the three (3) bags on the sidewalk corresponding with the nose of his package car. Dennis then said he was not sure if he had set them down at the nose of the truck

16

Although he left the three bags on the sidewalk, Dennis kept an eye on them while he looked for the FedEx driver. When asked if he left the bags on the sidewalk or carried them around with him, despite the fact that at this point all of the witnesses and representatives of both sides and the Arbitrator had viewed the surveillance video, Dennis answered that he did not recall. Grievant could not recall the order of the places that he went to look for the FedEx driver but acknowledged that, at one point, he walked toward Sixth Avenue. When asked how far he had walked toward Sixth Avenue, Dennis answered, "two hundred feet". He did not remember whether he had the bags in his possession when he did this which prompted the question whether he had left them two hundred feet away. Grievant answered in the negative. He did not answer the next question, "Well, did you take them or not?" Dennis did not move toward Sixth Avenue right away. He remained by his truck for five to ten minutes to see if the FedEx driver would show up. Dennis did not call the Company to advise that he was being further delayed. At some point, he found himself standing in front of a bar next to a video store and he estimated that the distance was the length of his truck. He remained there for between five and ten minutes without moving. At this point in the hearing, Grievant stated that he did not know what two hundred feet equaled. He acknowledged that he would never have left packages two hundred feet from his sight. He stated that he is five feet, six inches tall and despite knowing that, he did not have a good sense of distances. When asked whether he was accurate when he said that he had waited approximately five to ten minutes at a location approximately twenty feet (the length of the UPS vehicle) away from his package car, Dennis said that he did not stay there but rather was moving around, going back and forth to the Fifth Avenue corner and across the street looking for the FedEx driver. He stated that he never walked as far as two hundred feet to the West looking for the FedEx driver. When counsel for the

17

Company pointed out that the hearing room was approximately thirty feet long and, using that as a reference point, he asked Grievant what he estimated two hundred feet would look like. Dennis answered, "the length of the table in the hearing room". The Arbitrator pointed out that the conference table in the hearing room appeared to be approximately twenty feet long. No one in the room disagreed.

Grievant stated that he had told Company investigators that he had gone looking for the FedEx driver. He did not remember to whom he said this. Dennis was then referred to the statement he provided to Gamboa (Employer Ex. 4) and the fact that it makes absolutely no reference to him walking, back and forth, looking for the FedEx driver. When reminded that Gamboa had testified that he told Dennis to state everything that had occurred, Grievant testified that Gamboa told him to be brief. Gamboa did not ask Dennis whether he had looked for the Driver. Grievant took ten to fifteen minutes to write his statement. He admitted that he could have taken as much time as he wanted. The first person Dennis told that he had looked for the FedEx driver was Cleary. He also told Dozier. Grievant did not tell that to Gamboa.

Dennis estimated that he walked to the West of his truck approximately two to three times, never going more than twenty feet and he never went Easterly more than to the back of the FedEx truck. He estimated that the curb at which 49th Street and Fifth Avenue intersect was approximately six feet from the back of the FedEx truck. He walked East approximately two to three times. Grievant did look for the FedEx driver on the other side of the street at a point basically parallel with his own vehicle. When asked if he had left the three bags behind when he did this, Dennis answered that he did not remember but added that, if he did, the bags would still be in his view. When reminded that he had earlier said that he had placed the bags near the front wheels of his

18

truck, Grievant replied that he could still see the bags when he crossed the street. Dennis then stated that he did not walk across the street but only walked into the middle of the street. Returning to the point when he stationed himself in front of a store to the West of where his vehicle was parked, Grievant stated that he had remained there for an uninterrupted period of time before leaving that spot to look elsewhere for the FedEx driver. It was pointed out to Dennis that he did not make a call to Burgos until 5:10 p.m. and this meant that he had been on the street for a half hour before making this call. Dennis stated that it was not as long as a half hour. He was again shown his statement (Employer Ex. 4) wherein he stated that he had made the call at 5:10 p.m. which equaled a half hour. Dennis replied that he believed he had made the call at 5:00 p.m. He had made this call while standing by the driver's door of the FedEx truck. When asked where he was positioned when he phoned Burgos, Grievant answered right near the bags on the sidewalk. He did not remember whether or not he was holding any of the bags or whether they were all sitting on the sidewalk when he made this call but he was sure that if the bags were not in his hands, they were right next to him. Grievant was asked again where the bags were when he made the call and he replied in the front of the UPS truck on the sidewalk. He then stated, seemingly contradicting himself again, that the bags were at his feet when he made the call to Burgos. That call lasted approximately six minutes. He had moved to the FedEx truck driver side door during this call which he estimated was about nine to ten feet away. He did not keep his eyes on the bags because he went to retrieve the FedEx truck number. Dennis realized he had made a mistake by turning his back to the bags. He estimated that he had been speaking to Burgos for approximately three minutes before Burgos told him to get the truck number. Grievant remembered the number of the truck, saying, "I could never forget it....It was 211169". It took him five seconds to walk back ten

19

feet to where he had left the bags. He was still on the phone with Burgos. He then saw that a bag was missing. Grievant then stated that he did not remember whether he was still on the phone with Burgos. He did not call Burgos back right away even though he knew the bag was missing. He looked around for five minutes. Dennis gave no answer to the question of whether the missing bag could possibly be in his view after five minutes. When pointed out that Burgos had testified that Dennis did not call for twenty minutes to report the missing bag, Dennis stated that it was not that long and that he would not have waited twenty minutes to report it. He estimated that it was closer to ten or fifteen minutes but he was not certain. When it was pointed out again that his own statement placed the call at 5:10 p.m., Dennis stated that it may have been 5:00 p.m. or 5:05 p.m. and, thus, no more than fifteen minutes between calls. Dennis conceded that it could have been fifteen minutes. When asked why he would wait that long, Dennis changed his story again and said it was no more than five to ten minutes. Grievant believed that the FedEx truck was not moved until after he had returned to the site following the giving of his report to the police as opposed to being moved when Dozier first arrived at the scene. He was sure that it did not happen earlier. At this point, the video was played which showed that the FedEx driver pulled out of his spot at 5:29:05. Grievant was not willing to accept that the moving of the truck had to have been before he went downstairs to the UPS counter with Dozier.

## CONTENTIONS [10]

### Union's Contentions

The Arbitrator should find that the Employer did not have just cause to discharge Clive Dennis and, accordingly, direct the Company to rescind it.

---

[10] The statement of the parties' contentions is drawn from the closing statements of their counsel and is set out in different line spacing, font size and style to differentiate their words from the Arbitrator's.

This case reminds us of the eight hundred pound gorilla in a room. Has the Company proven that Grievant stole the missing bag as it promised it would establish? Under any verbalization of the burden of proof in a case of this sort, it is clear that it is a heavier one and that the Employer did not meet it. Despite the presence of videotape and testimony and evidence of an investigation, there is no concrete evidence of Dennis giving the bag to anyone or that he had even been found with the bag or that he had stashed it somewhere. Again, there is nothing in this record that proves that Grievant stole the bag. The Company has suspicions and brings innuendos out into the open which simply do not survive the light of day. UPS' operations are worldwide with depots all over New York City. It is no mom and pop operation. If UPS had wanted the police department to follow-up on the search for the missing bag, it could have taken all sorts of steps to that end and the Company would not have been ignored. It is undisputed that besides Grievant's own report to the police, UPS took no steps to involve the police department or any other law enforcement agency or even its own internal security to ascertain whether Dennis had stolen the bag. Cleary said that sometimes UPS does go to the police and asks the police to follow-up when its case is neat and they can tie things together. What is the implication of this? The Company did not have a case to present to the police department and certainly not enough to give the Arbitrator proof that Dennis stole the bag which, we maintain, he did not. As the Company did not meet its burden of proof on theft, what it has left is merely suspicion and frustration over the fact that the bag disappeared. The Company wants innuendo to be in the Arbitrator's mind in deciding the case. We want it pulled out and erased because the Arbitrator should not be operating on innuendo but rather proof. The Company decided that it would nail Dennis on some other basis so, to achieve that, they decided to keep asking him what happened, knowing that he would trip up somewhere creating inconsistency and then reach a conclusion that he lied during the investigation. In fact, this is what happened on October 6, 10, 12 and 19 and, therefore, there were five separate times when the Company asked Grievant to disclose what happened. Each of these times was further away in time from the incident and inevitably some of the details did not jive perfectly. Is that because Grievant lied or is it more because, like the rest of us, he is human? That is not dishonesty rather it is how people remember things and retell them. Dennis is not a lawyer. Lawyers are trained to break things down into specific periods. Lawyers repeatedly go over the facts; analyze them; and, turn them upside down. Lawyers develop a skill and ability to describe things so it appears to be very simple. Grievant is not a lawyer; he is a Driver for UPS. The Company makes a big deal about discrepancies but they are not a function of dishonesty but rather from the requirement that he continue to repeat what occurred. Finally, if Grievant really wanted to lie, he would have made a point of trying to tell the exact same story. He did his best and admitted that he did not remember everything. It is true that he did not get every detail right but it is now nine weeks from the event. It is unrealistic to expect Dennis to reconstruct with exact precision and with split second timing what precisely took place, that is, when it occurred; the order in which things happened; and, how long things took. When people do that, it is called theater because they know exactly what to say and the sequence. This is not theater; it is real, live testimony. Dennis is not a thief nor a liar.

With respect to the surveillance tape, it is worthless because it is fuzzy, hard to see and flip flops between one angle and another. A large portion of every screen is blocked by a post. The camera had limited scope because it could not turn its head and it's like tunnel vision. It is not a useful witness because it is no better than a witness who sees incredibly poorly. The tape is not inconsistent with Grievant's basic explanation. He left the Center at 4:40 p.m. with bags, waiting for the FedEx guy to return — a reasonable thing to do. The FedEx guy does not return and we see that, at 4:56 to 4:58, in fact, Grievant is on the phone, facing the FedEx truck and looking at it. He is looking at the number on the truck and that is what he continues to say every time when asked what happened. All agree that at about

ten minutes later, Dennis called Burgos and advised him that the bag is missing. Was there a gap? If, all of a sudden, a Driver lost a bag, it is understandable that he would not want to immediately call his boss but rather would wait to see if he could find it. It is an entirely human reaction and that is all he did. Dennis' story is not so far-fetched. There is customer theft in the jewelry district. Indeed, UPS uses UPG as a security force because of the risk of theft. Therefore, it is a plausible and likely scenario. In short, Dennis, who may not be the most articulate man, makes a mistake but he neither is a thief nor a liar. The Company has not proven its case and, therefore, the grievance must be sustained.

[Rejoinder]. As to the identification of the person at 5:17 p.m., we direct the Arbitrator's attention to 5:17:41 where he will see that that individual is not Dennis.

## Employer's Contentions

The Union claims that the Company had fired Dennis for lying and now is holding him responsible for the missing bag and that, because it really wanted to discharge him for theft but could not put the evidence together, management set about to entrap him with inconsistent versions of his story. However one interprets the Union's position, if it is still its position, that the only basis for the discipline is set forth in the letter which speaks of lying, we contend, as the Arbitrator correctly noted, that in labor arbitrations, unlike other areas of litigation, we must look at the whole communication between the parties and the Grievant. The thrust of the Company's concern had to do with the disappearance of a bag of packages and Dennis' inability to give any plausible explanation and it also has much to do with Grievant's repeated changes in story - shifting like we have never seen. The record establishes that Grievant lied during the investigation and that justified his termination but the Union and Grievant were on notice that it involved more than just his lying. The disappearance of the bag and the loss of packages were very much in issue. The Company does not strictly fire someone for lying during an investigation. The disappearance of the bag and Grievant's explanations are properly before the Arbitrator. There comes a point where the employee provides no real explanation and then tries to make one up. It is the reason for all of the inconsistencies in Grievant's testimony. It is an outright misrepresentation of the facts each time he tells a different story and it is symptomatic of someone who is lying. There were no less than four versions given by Dennis before he was discharged at the final meeting. We have to recognize that although the Union saw the tape before Grievant's termination, Dennis saw it for the first time after it, presumably in preparation for the hearing and he gave Union counsel input on how the tape should be interpreted. Admittedly, this is not the best video and the Company never said it was. Clearly it shows much and all that it needs to show to demonstrate that Dennis was deceiving the Company when, without knowledge of the tape's existence, he provided different explanations. Unbeknownst to him, it all unfolded on camera. Although the video was present at the hearing today to be played to impeach any of Cleary's testimony, Dennis chose not to do so. By not doing so, he left the testimony about the video uncontradicted. When Cleary says it is Grievant on the tape at the end, it is accurate. That individual does not look any different than Dennis, seen earlier. His failure to use the videotape to contradict Cleary's testimony constitutes an admission that it was him. We see him walking off the screen at 5:17 and it was the last time we see him before Dozier arrives. The Arbitrator should remember that Grievant did not dispute that at all. Every single witness who spoke to Grievant said that he told them that it all happened immediately after he came onto the street and saw that his truck was blocked. From the tape, we know that it did not happen that way. The tape exposed his inconsistent statements. From the very beginning,

Grievant was seen at 16:40 on the sidewalk with three bags although he tells Burgos, Dozier and Gamboa and everybody else that as soon as he saw what the situation was, he called the Company and told them that he could not get into his cab and they asked for his position while he was on the phone and then the bag mysteriously disappeared. The tape shows that Dennis set the bag down, not where he said he did, but between the two package cars. He is seen picking them up and then ninety seconds later, he walks off in the direction of Sixth Avenue. Two minutes later, he returns into view, carrying no packages. Where did they go? He never provided an explanation at any time. Four minutes later, we see him on the street. A minute and a half later, he is still holding three bags and walking toward Sixth Avenue. Twelve seconds later, he is back in the view of the camera, holding no bags. Six minutes later, at 16:47:37, we see him walk toward Fifth Avenue without any bags. Then, at 16:50:35, we see Dennis back in view, holding one bag in each hand. None of it jives with anything he told the Company prior to the arbitration nor even today in terms of the sequence of events. He never said anything to the Company about having looked for the FedEx driver or that he waited at a store next door for five to ten minutes waiting to see if the FedEx driver would arrive. Today, he says that and that he put the bags down in front of the UPS car. Why does he say that? Because he has seen the tape and because he knew that the front of the UPS car was not in the field of view of the camera. He could have said that during the investigation but never did so nor did he talk about the male Hispanic in the green jacket. Dennis claims now that he told the police, yet there is nothing in the police report to corroborate that. Wouldn't you tell the police if you saw a suspicious character who seems to be distracting you? Now, Dennis wants us to believe that he was searching for the FedEx driver but waiting in another area but his testimony does not allow that finding. He had to have remembered important details of the incident as it never happened before. It would stick in his mind. It is important for him to tell you accurately what happened. His job depends on it. He does not do that but, rather, makes it up as he goes along. When you do that, at some point you will fall down and get tripped up. He said what he wanted to say when on the witness stand. He volunteered that he had walked two hundred feet but then he realized that he could not have left the package that far away so he quickly makes up a new story; no more so before the hearing or before Dennis took the stand to testify. He has no credibility. He never told this fact to the Company. It was not unreasonable and the Company was well within its rights to have concluded that his giving so many different versions was not a mere lapse of procedure on his part. It saw a man giving shifting explanations. If he were responsible for the loss only as a result of negligence, there would be no reason for him to make up so many stories. If it was a case of a mistake by a sixteen year employee, we would not be here. He did not go that route. He deceived the Company in several ways as reflected in the record.

With respect to the Company's proof — the testimony and the video — if there was any doubt about their worth, there should be no doubt today after hearing Grievant's testimony. The Company takes no pleasure in taking a case before you and making these kinds of charges but none other can be made. A Driver of his experience needs to be able to explain discrepancies in a manner that does not reflect falsification. There is a clear basis in this record to find that Grievant lied during the investigation and that, by itself, justified his termination. In the totality, there is no basis to believe his accounts and where the explanations given are shown to be inconsistent with earlier explanations, it must imply to a reasonable person that he did so to cover up his misdeeds. It may be that one might encounter a situation where a Driver had turned his back away from the package and then, in looking back, discovered that someone took the bag. But the tape shows that Grievant walked back and forth, much of the time a good distance away from the packages despite the fact that the package did not disappear until the few seconds it took him to walk from the UPS truck to the rear of the FedEx truck to read the numbers. The probabilities of that are exceedingly small, that is, that it happened in five seconds. If he called at 5:10 to speak to Burgos and if he spoke to the

security personnel and waited there, why is it that at 5:17 we see him walking off the camera toward Fifth Avenue with one bag in each hand. Where is he going then? He is no longer looking for the FedEx driver. The Company had already contacted FedEx. For some significant time after that, where does he go for the five to ten minutes before Dozier arrives and meets him? It is a serious question, deserving of an answer which we never got from Dennis. The Company acted with just cause in terminating Dennis whether it was for lying, for the loss of package, or both. There are ample grounds to sustain it. The bag disappeared as a result of improper action on Grievant's part. It was not just a lapse in procedure. The Company was never given a reasonable explanation for what happened. Grievant is not deserving of a position with UPS.

## DISCUSSION

The Arbitrator has heard thousands of cases over the last twenty years. He cannot recall one where he had so frequently indicated in the margins of his notes how many times Grievant had lied. It was shocking, and the Arbitrator can well understand Schultz' frustration over the fact that he and other investigators had repeated difficulty in getting a straight answer or consistent ones from Dennis. This lack of consistency and candor, coupled with the fact that the video contradicted Grievant's account of so many important events and sequences, compelled Schultz to conclude that Grievant was a liar and, with packages of high value at stake—Diamond District packages—it created a very strong inference that his dishonesty embraced not only falsehoods but theft, too. That is the conclusion reached here.

For sure, the basic case urged by the Union boils down to one where a good employee was neglectful or even grossly so when confronted with being blocked by a truck parked behind his, allowing for a bag of packages to be stolen right before his eyes. Employees in such situations who immediately report the loss and explain how it came about, if fairly plausible, should not be discharged for theft or dishonesty but may suffer harsh discipline for failing to follow procedures or to act with common sense. Moreover, even though it was odd that Dennis, upon seeing the rear doors of his own vehicle blocked, did not immediately call a supervisor to get permission to lock

the bags in the cab of his truck while he scampered about looking for the FedEx driver, that would not have been a basis to believe that his failure to do so was designed to facilitate the taking of one of his bags of packages. It would simply have been an error of judgment and the loss would have been seen as "coming with the territory"—the Diamond District.

Not quite as acceptable is how it was that the thief stole only one bag when, according to Grievant, the three bags were together. The same would be true if he had left only two bags on the sidewalk. Would a thief run the risk of getting caught with stealing only one bag of packages that perhaps had very little resale value when, in stealing all three (or two if he walked about with one bag in his hand), there would be a greater chance of finding packages that were? The Company's records demonstrated that the bag that was lost had significant retail value despite the Employer's good fortune of having limited liability. Leaving aside this one bag oddity, we are down to whether Grievant was honest about how he lost possession of the bag.

It is more than curious that Dennis could remember the FedEx truck number precisely but little else of what happened in the time between his first sweep of the UPS counter and his driving his vehicle back to 43rd Street. Even had there been no videotape, the Company had the right to conclude that, like a moving target in a carnival shoot booth, Grievant's versions of the events were never the same and were filled with deliberately evasive answers. Even allowing, as the Union urges, that the stress of losing the bag and having to account for it and being questioned by different individuals might explain some variation in key facts, what is left still compels a finding that Grievant lied for a reason which went beyond avoiding condemnation for his negligence in handling the bags. As Company counsel pointed out, this was an unusual event and someone in the middle of it would have remembered essential times, places and movements. Dennis told us that he

25

remembered the FedEx truck number for those same reasons.

The surveillance tape was surely not one which, by itself, could demonstrate that Grievant was a thief or even dishonest. It is the match up of his prior statements with the video that shows Dennis was not honest about his movements and the time it took for him to notify supervision that his package car had been made inaccessible. The essence of Dennis' version to Company representatives was that he called Burgos upon discovering that his vehicle was blocked. The video shows otherwise. Dennis also said that he had left the bags on the sidewalk adjacent to the front of his vehicle and had gone to the FedEx truck to report its identification number. The Arbitrator reviewed the video several times and it appeared as though when Dennis was at the FedEx truck making a call, he had bags with him. Grievant is then seen in and out of the screen carrying, at various times, three bags, two bags and one bag. Thus, his statement that when he returned to his vehicle to collect his bags he discovered one was missing was not credible.

Cross-examination caught Dennis in more lies than the Arbitrator need chronicle. Among them was Dennis' allegation that he had walked as much as two hundred feet away from his truck. When Grievant realized that this would have been a preposterous thing for him to do – leaving his bags so far away from his person – he then began an endless battery of lies, including that he really did not know what two hundred feet represented. Dennis initially stated that he remained on the phone with Burgos as he returned to where he had left the three bags, however, when asked why he did not immediately say something to Burgos, Dennis changed his story and claimed that he had already concluded this conversation with that supervisor. The issue about the alleged Latin-looking male is meaningless because Grievant claimed that he did not know whether the encounter occurred before or after he discovered the bag was missing and, more importantly, if it were

otherwise, Dennis, on his own initiative would have told Burgos about it which he clearly did not do.

Every discharge looks to the future. It asks whether, notwithstanding the transgressions committed, the errant employee can be trusted. This is not a case, for example, of an employee in a mom and pop bakery lying when he said that he had put pink frosting on the dozen donuts ordered when the evidence shows that those donuts were coated with chocolate icing, as wrong as that would be. Here, the Company's ability to give good service and to protect the valuable products it is transporting from loss, in its many forms, depends greatly on the integrity of its Drivers and Loaders, among other job titles. Grievant cannot be relied on to fulfill this trust. While it is always said to see a long-term employee lose his/her job, particularly one which compensates so well, it would be inappropriate for the Arbitrator to compel the Company to give Dennis another chance where the evidence of dishonesty is so strong. The Employer met its burden of proof and, accordingly, the Arbitrator must find that it has just cause to discharge Dennis.

## **AWARD**

After consideration of the entire record and for the reasons discussed fully in the opinion above, I find and award as follows:

The Employer has just cause to discharge Clive Dennis.

It is so ordered.

Dated: January 7, 2006

_____ D. Shriftman

27

State of New York)
          ss.:
County of Suffolk)


    I, Elliott D. Shriftman, do hereby affirm upon my Oath as Arbitrator that I am the individual described in and who executed the instrument, which is my Award.

                                        Elliott D. Shriftman

**Exhibit 5**

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK: EXECUTIVE DEPARTMENT

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

CLIVE DENNIS

Complainant                    VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

v.

Case No.
UNITED PARCEL SERVICE, INC.                    10114886

Respondent

Federal Charge No. 16GA700660

I, Clive Dennis, residing at 120-55 166th Street  1 Floor, Jamaica, NY, 11434, charge the above named respondent, whose address is 643 West 43rd Street Suite 702, New York, NY, 10036 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 10/6/2006.

The particulars are:

1.   I filed a prior complaint (10110310) and because of this, I have been subjected to unlawful discriminatory actions.

2.   On October 6, 2006, I went to 49th Street and 5th Avenue to pick-up three bags that contained several packages.  After obtaining the packages I could not get into my truck because I was being blocked by a Federal Express truck.  While looking for the Federal Express driver, I placed the packages on the ground and one of them was stolen.

3.   I informed George who was acting as the supervisor that day that I was being blocked by the Federal Express truck. It was at that time that I realized that one of the bags which had about 8 packages inside was missing.  I called George back to tell him that one of the bags with the 8 packages was missing.

4.   The Loss Prevention person arrived at 49th Street and questioned me as to the missing "bag".  I formed him that while I was on the cell phone talking to George or while I was looking

Complaint
SDHR Case No. 10114986
Clive Dennis v. United Parcel Service, Inc.

for the Federal Express driver someone must have stolen the bag. The police was notified and a police reported was filed.

5. On October 11, 2006 I was called to the Loss Prevention Office and was asked to write a brief report on the incident. On October 18, 2006 I was again questioned by the Loss Prevention person and recounted the same story I had told them previously. On October 19, 2006 I was informed by the Loss Prevention Office that I was terminated. The following day both I and my union representative returned to the Respondent's office where I tried to explain to Thomas Schultz, Labor Manager what happened to the bag, and he replied "I have heard it all".

6. On Friday, October 20, 2006 I was informed by the union representative that I could return to work on October 23; 2006. I was also informed that I could work only until arbitration is decided in my case.

7. I addition, I believe that Thomas Smith is trying to place me as arriving to work late so that they would have a reason to fire me. Also I believe that they are retaliating against me because I filed a prior complaint.


Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

Complaint
SDHR Case No. 10114886
Clive Dennis v. United Parcel Service, Inc.

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

*Clive Dennis* (signature)
Clive Dennis

STATE OF NEW YORK )
COUNTY OF          ) SS:

Clive Dennis, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

*Clive Dennis* (signature)
Clive Dennis

Subscribed and sworn to
Before me this 20th day
Of November, 2006

_____
Signature of Notary Public

Page 3 of 3

**Exhibit 6**

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK : EXECUTIVE DEPARTMENT

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

CLIVE DENNIS

Complainant

v.

UNITED PARCEL SERVICE, INC.

Respondent

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10115706**

Federal Charge No. 16GA701327

I, Clive Dennis, residing at 120-55 166th Street 1 Floor, Jamaica, NY, 11434, charge the above named respondent, whose address is Legal Department
55 Glenlake Parkway N.E., Atlanta, GA, 30328 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York. (Human Rights Law) because of opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 1/15/2007.

The particulars are:

1.    I filed a prior complaint on November 20th 2006 (# 10114886 )and because of this, I have been subjected to unlawful discriminatory actions.

2.    I was terminated on January 15, 2007 for the lost of a package.

3.    I believe that if I had not filed a prior complaint I would not have been terminated.

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on

Page 1 of 2

Complaint
SDHR Case No. 10115706
Clive Dennis v. United Parcel Service, Inc.

behalf of the U.S. Equal Employment Opportunity Commission
(EEOC) subject to the statutory limitations contained in the
aforementioned law(s).

I have not commenced any other civil action, nor do I have an
action pending before any administrative agency, under any state
or local law, based upon this same unlawful discriminatory
practice.

_____
Clive Dennis

STATE OF NEW YORK )
                  ) SS:
COUNTY OF         )

Clive Dennis, being duly sworn, deposes and says: that he/she is
the complainant herein; that he/she has read (or had read to him
or her) the foregoing complaint and knows the content thereof;
that the same is true of his/her own knowledge except as to the
matters therein stated on information and belief; and that as to
those matters, he/she believes the same to be true.

_____
Clive Dennis

Subscribed and sworn to
before me this 17th day
of January, 2007

_____
Signature of Notary Public

Page 2 of 2

**Exhibit 7**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

CLIVE DENNIS,
                               Complainant,

                    v.

UNITED PARCEL SERVICE, INC.,
                               Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10114886

---

Federal Charge No. 16GA700660

On 11/20/2006, Clive Dennis filed a verified complaint with
the New York State Division of Human Rights ("Division")
charging the above-named respondent with an unlawful
discriminatory practice relating to employment because of
opposed discrimination/retaliation in violation of N.Y. Exec.
Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review
of related information and evidence by the named parties, the
Division has determined that there is NO PROBABLE CAUSE to
believe that the respondent has engaged in or is engaging in the
unlawful discriminatory practice complained of. This
determination is based on the following:

The information gathered during the course of the investigation
is not sufficient to support the Complainant's allegation of
retaliation. The Complainant, who was a long term employee and
who filed a previous complaint lost several of the Respondent's
packages. The Complainant contends that the packages were stolen
while he was looking for the driver of a truck that had him
blocked in. The evidence presented demonstrates that the
Complainant repeatedly walked away from the packages, leaving
them unattended. The investigation showed that when the
Complainant was questioned, he gave several different versions
of how the packages were stolen. The record shows that the
Respondent had difficulty in believing any of the Complainant's
versions of events because they did not line-up with the video
tape version. In addition, Respondent relied upon an impartial
security agency, UPG who interviewed the Complainant on site
services to the Respondent whenever packages are stolen. The

investigation revealed that it was that agency and the Complainant's version of events that caused the Respondent to deem him dishonest. Respondent's company policy explicitly states that dishonesty is punishable by termination of employment.

The investigation failed to produce any evidence that the Respondent retaliated against the Complainant because he filed a prior complaint. The Record shows that from May, 2005 until March, 2006 (4) employees were terminated for lying during an investigation and none had filed a prior complaint with the New York State Division of Human Rights as did the complainant.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated: December 7, 2007
　　　　New York, New York

　　　　　　　　　　STATE DIVISION OF HUMAN RIGHTS


By: _____
　　　　Wilson P. Ortiz
　　　　Acting Regional Director

- 2 -

**Exhibit 8**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

CLIVE DENNIS,
                                    Complainant,

                    v.

UNITED PARCEL SERVICE, INC.,
                                    Respondent.

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10115706

Federal Charge No. 16GA701327

On 1/17/2007, Clive Dennis filed a verified complaint with
the New York State Division of Human Rights ("Division")
charging the above-named respondent with an unlawful
discriminatory practice relating to employment because of
opposed discrimination/retaliation in violation of N.Y. Exec.
Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review
of related information and evidence by the named parties, the
Division has determined that there is NO PROBABLE CAUSE to
believe that the respondent has engaged in or is engaging in the
unlawful discriminatory practice complained of. This
determination is based on the following:

The evidence gathered during the course of the investigation is
not sufficient to support the Complainant's allegation of
unlawful discrimination. The evidence presented demonstrates
that the Complainant was responsible for picking up a package
from the Respondent's customer. The evidence shows that although
the Complainant retrieved the package from the customer, he
failed to secure the property and it was stolen. The Respondent
questioned the Complainant and he gave several different
versions of events that led to the package being stolen. The
Respondent viewed a video tape from a nearby store that showed
some of the Complainant's actions during the theft of the
package. The Respondent stated that after viewing the tapes they
discovered that they were inconsistent with the statements
Complainant gave. The investigation showed that the Respondent
believed that the Complainant was dishonest and terminated him
based on that belief. The record showed that the Complainant

grieved his termination and the arbitrator upheld his
termination and ruled in the Respondent's favor.

Respondent relied upon an impartial tribunal, which tribunal
informed Respondent that Complainant had acted dishonestly.
Respondent's company policy explicitly states that dishonesty is
punishable by termination of employment. Complainant was made
aware of this policy.

Complainant does not present any evidence of a discriminatory or
retaliatory animus. The record shows that during the relevant
time frame Respondent terminated 5 employees including the
Complainant for being dishonest and of the 5 only the complaint
had filed prior Complaints.

        The complaint is therefore ordered dismissed and the file
is closed.

        PLEASE TAKE NOTICE that any party to this proceeding may
appeal this Determination to the New York State Supreme Court in
the County wherein the alleged unlawful discriminatory practice
took place by filing directly with such court a Notice of
Petition and Petition <u>within sixty (60) days after service of
this Determination</u>. A copy of this Notice and Petition must
also be served on all parties including General Counsel, State
Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx,
New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION
WITH THE STATE DIVISION OF HUMAN RIGHTS.

        Your charge was also filed under Title VII of the Civil
Rights Act of 1964. Enforcement of the aforementioned law(s) is
the responsibility of the U.S. Equal Employment Opportunity
Commission (EEOC). You have the right to request a review by
EEOC of this action. To secure review, you must request it in
writing, within 15 days of your receipt of this letter, by
writing to EEOC, New York District Office, 33 Whitehall Street,
5th Floor, New York, New York 10004-2112. Otherwise, EEOC will
generally adopt our action in your case.

Dated: June 29, 2007
New York, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____
Wilson P. Ortiz
Acting Regional Director

- 3 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 16th day of January, 2008, I electronically filed the foregoing

Answer of Defendant United Parcel Service, Inc. with the Clerk of the District Court using its

CM/ECF system, and I caused a true and correct copy of the foregoing Answer of Defendant

United Parcel Service, Inc. to be served by overnight delivery in accordance with the Federal

Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern

District's Rules on Electronic Service, upon the following:

S. Felix Ngati
Law Offices of S. Felix Ngati
1203 Nostrand Avenue
Brooklyn, New York 11225
*Attorney for Plaintiff Clive Dennis*

Hanan B. Kolko, Esq.
Meyer, Suozzi, English & Klein, P.C.
1350 Broadway, Suite 501
New York, New York 10018
*Attorney for Defendant Local 804, I.B.T.*

EVANDRO C. GIGANTE (EG-7402)
*Akin Gump Strauss Hauer & Feld LLP*
590 Madison Avenue
New York, New York 10022
(212) 872-1039 (Telephone)
(212) 872-1002 (Facsimile)

*Attorneys for Defendant United Parcel Service, Inc.*

17