UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CLIVE DENNIS,                                          :
                                                       :
                      Plaintiff,     :       07 Civ. 9754 (HB)
                                                       :
       -against-                                      :       **OPINION & ORDER**
                                                       :
UNITED PARCEL SERVICE INC., and                        :
LOCAL 804, L.B.T. UNION,                               :
                                                       :
                      Defendants.    :
-----------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[*]

     Plaintiff Clive Dennis ("Dennis") has brought suit against Defendants United Parcel Service Inc. ("UPS") and Local 804 L.B.T. Union ("Union") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law and the New York City Administrative Code. Defendant UPS moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the following reasons, UPS's motion is granted.

## I.  FACTUAL BACKGROUND

**A.**  **Dennis' First Complaint with the New York State Division of Human Rights**

     Dennis, a black man of Jamaican descent, began working for UPS on May 15, 1990, and was soon promoted to package car driver for midtown Manhattan. (Compl. ¶ 6,7,14.) Dennis' employment was governed by a collective bargaining agreement ("CBA") between UPS and Defendant Union. (Answer Ex. 4 at 2.) In June 2005, a couple of years before the events that gave rise to this litigation, UPS had terminated Dennis' employment for the first time. In response, on February 21, 2006, Dennis filed a charge ("*Dennis I*") with the New York State Division of Human Rights ("Division") to contest his termination. (Answer Ex. 1.) Ultimately, the parties settled, and Dennis released UPS from any liability for claims that arose prior to April 13, 2006, in exchange for reinstatement to his job. (Answer Ex. 2.) On May 8, 2006, the Division acknowledged that Dennis had withdrawn his charge in a written communication to the Division on April 13, 2006. (Answer Ex. 3.)

---

[*] Jonathan Jacobson, a Fall 2008 intern in my Chambers and a second-year law student at Brooklyn Law School, provided research assistance in conjunction with this Opinion & Order.

### B.     Dennis' Second Complaint with the Division

On October 6, 2006, UPS dispatched Dennis to pick up and deliver three bags of packages. (Compl. ¶ 20.) Dennis alleges that he picked up the three bags, but upon return to his truck, he found it blocked by another delivery vehicle, whose driver was absent. (*Id.* ¶¶ 21-22.) Dennis admits that he left the three bags on the street unattended, and proceeded to "run around" in search of the driver to ask him to move his vehicle. (*Id.* ¶ 22.) Dennis alleges that while he was away, one of the bags went missing. (*Id.* ¶ 23.)

UPS investigated the incident by interviewing Dennis and other witnesses and by viewing surveillance footage taken by security cameras located at a nearby store. Following its investigation, UPS terminated Dennis' employment on October 19, 2006. (Answer Ex. 4 at 2.) Defendant Union challenged the termination on Dennis' behalf, and Dennis was permitted to continue to work while the Union arbitration was pending. (Answer Ex. 5 at 2.) A month later, on November 20, 2006, Dennis filed his second charge of discrimination with the Division ("*Dennis II*"), alleging that his termination amounted to unlawful retaliation for his having filed his first charge, *Dennis I*. (Answer Ex. 5.) The Division dismissed *Dennis II* on its merits more than a year later, on December 7, 2007, explaining that

> [t]he information gathered during the course of the investigation is not sufficient to support the Complainant's allegation of retaliation. . . . The evidence presented demonstrates that the Complainant repeatedly walked away from the packages, leaving them unattended. The investigation showed that when the Complainant was questioned, he gave several different versions of how the packages were stolen. The record shows that the Respondent [UPS] had difficulty in believing any of the Complainant's versions of events because they did not line-up with the video tape version. In addition, Respondent relied upon an impartial security agency, UPG who interviewed the Complainant . . . . The investigation revealed that it was that agency and the Complainant's version of events that caused the Respondent to deem him dishonest. Respondent's company policy explicitly states that dishonesty is punishable by termination of employment.

(Answer Ex. 7 at 1-2.)

### C.     Union Arbitrator Holds UPS Had Just Cause to Fire Dennis

Meanwhile, on January 7, 2007, the Union arbitrator held that UPS had "just cause" to terminate Dennis' employment. (Answer Ex. 4 at 27.) UPS claimed that it terminated Dennis' employment for "dishonesty in connection with package handling and for proven dishonesty in connection with statements he made to investigators and Company representatives with respect to [the] incident occurring on October 6, 2006." (*Id.* at 2.) In a twenty-seven page opinion, the arbitrator described in detail the investigation conducted by UPS after the incident, the testimony

2

of numerous witnesses and the contents of the nearby store's surveillance tape.  (See *Id.*)  The tape, which was played during the arbitration hearing, showed that Dennis left the three packages on the ground, walked away with one bag, returned with the bag, placed it on the ground, and then, after several comings and goings, walked away with all three bags but later returned to the UPS truck with only two bags.  (*Id.* at 10-11.)  In the video, "there was a lot of time when Grievant [Dennis] was seen walking back and forth with three bags, disappearing for over a half hour."  (*Id.* at 14.)  Each time the UPS Labor Relations Manager asked Dennis where he had walked with the bags, Dennis answered either "I don't remember" or "I don't know."  (*Id.*)

After hearing Dennis' testimony and the testimony of all the witnesses and after reviewing the record, the arbitrator wrote that of the "thousands of cases" that he had heard over the last twenty years he "cannot recall one where he had so frequently indicated in the margins of his notes how many times Grievant [Dennis] had lied.  It was shocking . . . ."  (*Id.* at 24.)  The arbitrator concluded that Dennis' "dishonesty embraced not only falsehoods but theft, too," and that "[c]ross-examination caught Dennis in more lies than the Arbitrator need chronicle."  (*Id.* at 24, 26.)  As a result of the arbitrator's decision, Dennis was again terminated from his employment on January 15, 2007. (Answer Ex. 6 at 1.)

**D.**     **Dennis' Third Complaint with the Division**

Two days later, on January 17, 2007, Dennis filed his third charge against UPS with the Division ("*Dennis III*"), alleging that his termination on January 15 amounted to unlawful retaliation for his having filed his second charge, *Dennis II*.  (*Id.*)  On June 29, 2007, the Division dismissed *Dennis III* on its merits, holding that Dennis had failed to present any evidence of a discriminatory or retaliatory animus on the part of UPS.  (Answer Ex. 8 at 2.)  The Division found that UPS had relied on an impartial Union arbitrator, which informed UPS that Dennis had acted dishonestly, that UPS's company policy explicitly stated that dishonesty was punishable by termination, that Dennis was aware of this policy, and that the record showed that during the relevant time frame UPS terminated four other employees for being dishonest, too, none of whom had filed a prior charge with the Division.  (*Id.*)  On July 30, 2007, Dennis obtained a "notice of right to sue" letter from the Equal Employment Opportunity Commission ("EEOC"), which adopted the Division's findings.  (Compl. Ex. 1.)

**E.**     **Dennis Files Action in Federal Court**

On November 2, 2007, Dennis filed this action in federal court.  He was represented by counsel when he filed his Complaint but has been *pro se* since June 2, 2008.

3

Dennis alleges that his immediate supervisor during his last four years at UPS repeatedly told him that he did "not like black Jamaicans." (Compl. ¶ 17.) Dennis also makes general allegations that his supervisor refused him workers' compensation benefits, accused him of falsifying medical records, refused to provide him with money to pay tolls while driving a UPS truck in the course of his job and tried to fire Dennis on several occasions without cause. (*Id.*) Dennis claims that he reported these "discriminatory acts" to UPS management but that they "failed to curb, stop or counsel plaintiff's supervisor, but condoned, and willfully allowed plaintiff's supervisor to discriminate by mistreating plaintiff at the work place as he pleased." (*Id.* ¶ 19.)

Dennis asserts that UPS terminated his employment as a package car driver because he is black and Jamaican and in retaliation for complaining about discrimination. (*Id.* ¶ 1.) Dennis alleges that "other non black Jamaican Caribbean employees working under the same supervisor have lost bags under same circumstances and they were not written off or terminated as was done to the plaintiff." (*Id.* ¶ 28.)

Dennis seeks recovery pursuant to Title VII (Count I), 42 U.S.C. § 1981 ("§ 1981") (Count II), New York Human Rights Law (Count III) and the New York City Administrative Code (Count IV). Plaintiff also brings causes of action for wrongful termination (Count V) and defamation (Count VI).

UPS moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and maintains that Dennis was terminated because he lost approximately $30,000[1] worth of parcels during his last delivery route and then lied to UPS investigators.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). A court "may also consider written instruments attached as exhibits as well as documents that are incorporated by reference or heavily relied upon." *World Book, Inc. v. Int'l Bus. Machs. Corp.*, 354 F. Supp. 2d 451, 453 (S.D.N.Y. 2005) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002)). "[A] court must accept the allegations

---

[1] Dennis contends that UPS has exaggerated the value of these packages and that their actual value was no more than $1,000, as demonstrated by the fact that the packages were not secured or insured. (*See* Compl. ¶ 27.)

4

contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994) (internal quotation marks and citation omitted).

### III.  DISCUSSION

**A.      Title VII**

Plaintiff alleges that UPS is liable for race and national origin discrimination in violation of Title VII.  Pursuant to 42 U.S.C. § 2000e-5, a plaintiff is required to file all discrimination claims with the appropriate administrative agency prior to bringing an action in federal court.  While a *pro se* plaintiff's allegations are held to a less stringent standard than attorney-drafted pleadings, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Forbes v. State Univ. of New York*, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003).  Moreover, when Dennis brought this action, he was represented by counsel.

Dennis obtained a "notice of right to sue" letter from the EEOC, based on his charge in *Dennis III*, but his administrative claims were for retaliation only, and not for race or national origin discrimination.  Neither of Dennis' complaints with the Division in *Dennis II* or *Dennis III* even mentions that he is black or Jamaican.  (Answer Exs. 5 & 6).  The closest they come to asserting race or national origin discrimination is their statement that Dennis "also charge[s] [UPS] with violating Title VII . . . (covers race, color, creed, national origin, sex relating to employment."  (*Id.* at 1.)  However, this is insufficient to constitute a race or national origin claim; his administrative charges allege nothing beyond retaliation for having filed a previous administrative charge.

Although the Second Circuit has held that it would be unfair to civil rights plaintiffs to bar claims that were not alleged in an administrative charge but are "sufficiently related" to the allegations in the charge, this is not such a case.  *See Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F. 2d 1397, 1402 (2d Cir. 1993).  Here, the conduct of which Dennis complains does not fall within the "scope of the [administrative] investigation which can reasonably be expected to grow out of the charge of discrimination," because *Dennis III* was only a claim of retaliation for having filed *Dennis II*, which in turn was only a claim of retaliation for having filed *Dennis I.  See id.*  The allegations in Dennis' administrative charges were unrelated to race or national origin discrimination.

5

Therefore, Dennis' Title VII claims are dismissed because he failed to file charges for race or national origin discrimination with the appropriate administrative agency. *See also Little v. NBC*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002); *Wilson v. Family Dollar Store*, No. 06 Civ. 639, 2007 U.S. Dist. LEXIS 23083, at *15-19 (E.D.N.Y. Mar. 29, 2007).

Even if Dennis' Title VII claims were not dismissed on this procedural ground, they would be dismissed because, based on the pleadings and drawing all inferences in Dennis' favor, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Sheppard v. Beerman,* 18 F.3d at 150. UPS has presented ample—perhaps even overwhelming—evidence that shows it terminated Dennis' employment for a non-pretextual, nondiscriminatory reason: he lost a package, and the Union arbitrator found that UPS had reason to believe Dennis had lied to investigators.

**B.    Section 1981**

In Count II of his Complaint, Dennis alleges that Defendants violated § 1981 by discriminating against him on account of his race and national origin. Unlike Title VII, a § 1981 claim does not require that a plaintiff first file with an administrative agency. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975). The Title VII pleading requirements apply to § 1981 claims. *See Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir. 1984). A complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Where a claim of wrongful termination "detail[s] the events leading to his termination, provide[s] relevant dates, and include[s] the ages and nationalities of at least some of the relevant persons involved with his termination," the complaint should not be dismissed. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008) (decided after *Twombly*).

Even before *Twombly*, this district held that a complaint that "provides no . . . detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that [the plaintiff's protected class] race played a role in [the employer's] decision to dismiss him" is insufficient to satisfy minimum pleading standards. *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006).

Here, Dennis makes two broad factual allegations to support his discrimination claim. First, he alleges that his supervisor repeatedly told him that he did not like black Jamaicans and that as a result of such discriminatory animus refused him workers' compensation benefits,

6

accused him of falsifying medical records and refused to give him "tools" for performing his jobs.  (*See* Compl. ¶ 17.)  Dennis alleges that he complained to "top management officials" to no avail.  Second, Dennis claims that non-black and non-Jamaican UPS employees who lost parcels "under same circumstances" were not fired.  If Dennis had not admitted to leaving packages unattended on October 6, 2006, and if there were not such unequivocal evidence that the termination was for just cause, these allegations might be sufficient to defeat a motion for judgment on the pleadings.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 (1976) (plaintiff "must be afforded a fair opportunity to show that [the] stated reason for [his] rejection was in fact pretext").

However, the information contained in Dennis' charges with the Division, the Division's findings and the arbitrator's opinion, all of which must factor into this Court's decision as they were attached to the pleadings, as well as Dennis' admission that he left three bags unattended on the street, are sufficient for this Court to find, on the pleadings, a legitimate non-pretextual reason for his termination.  His allegation that other non-Jamaican, non-black employees lost packages, but were not "written off or terminated," is not plausible under the standard articulated by *Twombly*, and he provides no details as to their identity or how they lost packages "under same circumstances."  Therefore, drawing all inferences in favor of Dennis, "judgment on the merits is possible merely by considering the contents of the pleadings," *see Sellers*, 842 F.2d at 642, and Dennis' § 1981 must be dismissed.

**C.**     **Human Rights and the Administrative Code**

Dennis also seeks relief pursuant to New York State Human Rights Law and the New York City Administrative Code.  While Dennis does not specify the sections of these laws from which his causes of action arise, this Court presumes that his claims are for violations of N.Y. Exec. Law § 297(9) and New York Admin. Code § 8-502, which provide a right of action for retaliatory termination.  However, it is well settled that a plaintiff may not bring a new retaliation action in federal court after the Division of Human Rights denies his action.  *See Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995).  A federal court lacks subject matter jurisdiction to hear retaliation claims that have already been decided by an administrative agency.  *See Forbes*, 259 F. Supp. 2d at 235 ("[I]f a litigant brings a discrimination complaint before the Division of Human Rights she may not bring a subsequent judicial action based on the same incident.") (citing *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002)).

In both *Dennis II* and *Dennis III*, Dennis challenged his termination on the ground that it was retaliatory, and in each case the Division dismissed the charge on its merits, finding that it had "no probable cause." (Answer Ex. 8). Therefore, this Court lacks subject matter jurisdiction over Dennis' human rights and administrative code claims, *see Forbes*, 259 F. Supp. 2d at 235, and these claims must be dismissed.

### D.   **Wrongful Termination**

Dennis alleges that he is entitled to relief against UPS "for falsely and unlawfully terminating plaintiff's employment." Without more information, it is ambiguous how, if at all, this claim differs from Dennis' human rights and administrative code claims. As stated, this claim is duplicative and must be dismissed.

### E.   **Defamation**

Finally, Dennis alleges that UPS is liable for defamation. To properly plead a defamation claim under New York law, a claimant must allege (1) a false and defamatory statement of fact, (2) of or concerning the claimant, (3) not protected by privilege, (4) publication to a third party, and (5) injury to the claimant as a result. *See, e.g., Albert v. Loksen*, 239 F. 3d 256, 265-66 (2d Cir. 2001). Here, Dennis fails to identify which statements by UPS were defamatory, who made the statements, when they were made, or if they were ever published. The only details that Dennis provides are that he believes UPS made "false representations" about him being "a thief and a fraud." Dennis' allegations are too vague to meet even liberal notice pleading standards. Therefore, his defamation claim is dismissed.

### IV. CONCLUSION

For the foregoing reasons, UPS's motion for judgment on the pleadings is GRANTED, and all of Plaintiff's claims against UPS are DISMISSED. The Clerk of the Court is instructed to close this motion.

**SO ORDERED.**

**New York, New York**
**November 20, 2008**

U.S.D.J.

8